UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUDY YOUNG CROWE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-2838** |
| **SOUTHEAST COMMUNITY HEALTH SYSTEMS** | **SECTION "K"(3)** |

## ORDER AND REASONS

Before the Court is a Motion to Extend Stay (Rec. Doc. 60) filed by plaintiff, Judy Young Crowe. Having reviewed the pleadings, memoranda, and relevant law, the Court dismisses the motion for the reasons stated herein.

On August 26, 2010, plaintiff Judy Young Crowe filed the instant lawsuit against defendant Southeast Community Health Systems ("SCHS") alleging that she was terminated from employment with SCHS in violation of the federal False Claims Act, 31 U.S.C. § 3730(h) and that she has been terminated from employment in violation of the Louisiana state whistleblower statute, La. R.S. 23:967(A)(2). On May 25, 2011, the United States Government declined intervention in this matter and on September 23, 2011, SCHS filed its first responsive pleading in this matter. After extensive motion practice, plaintiff filed a Witness and Exhibit List on December 5, 2011, (Rec. Doc. 18), and submitted Initial Disclosures to the defendant on the same day (Rec. Doc. 62, at 3). Later, on July 4, 2012, plaintiff served defendant with Answers and Responses to Defendant's First Set of Discovery, (Rec. Doc. 62, at 3), and on July 7, 2012, plaintiff submitted an Amended Witness and Exhibit List (Rec. Doc. 30). Plaintiff submitted a Second and a Third Witness and Exhibit List, filed on November 10, 2012 and November 30, 2012, respectively. (Rec. Docs. 30 & 32). Thereafter, plaintiff filed no further

1

witness and exhibit lists before the due date of final witness and exhibit lists on February 4, 2013.

In the meantime, defendant served a Second Set of Written Requests for Discovery to Plaintiff on January 25, 2013 to which Plaintiff responded on January 30, 2013. (Rec. Doc. 62, at 5). Throughout the month of February, the parties deposed various potential witnesses. (Rec. Doc. 62, at 7). On February 25, 2013, shortly before the discovery deadline, plaintiff filed a Motion to Continue Trial and All Dates. (Rec. Doc. 43). The continuance was based upon knowledge of a potential witness, Ms. Gwendolyn Atkins, who had not been previously disclosed in any witness and exhibit list or answers in discovery. Plaintiff's counsel alleges that Ms. Atkins potential as a witness was not known until "about February 22, 2013." (Rec. Doc. 67, at 3). Plaintiff alleged its Motion to Continue Trial and All Dates that this witness's testimony was central to plaintiff's case. However, plaintiff stated that the new witness agreed to testify only after the resolution of that witness' pending criminal trial set for March 4, 2013. Thereafter, the parties filed a Joint Motion to Stay All Pending Deadlines. (Rec. Doc. 45). The defendants did not agree to the allowance of the new witness at that time, but the defendants did request a formal stay of proceedings to resolve discovery issues. (Rec. Doc. 45, at 2). The Court granted the Motion to Stay on March 1, 2013. (Rec. Doc. 48).

The stay was lifted on July 9, 2013. (Rec. Doc. 53). Per a Status Conference held on January 23, 2014, Plaintiff's counsel discussed a continuing stay of the matter because of the continuing unavailability of Ms. Atkins. The Court instructed plaintiff's counsel to conduct legal research on the issue and file a Motion to Stay the case with supporting law pending the resolution of the witness' criminal prosecution. (Rec. Doc. 57). Plaintiff's Counsel filed the

instant Motion to Extend Stay on February 14, 2014 then filed a Motion to Continue the "Stay" Hearing to March 12, 2014, which was granted. (Rec. Doc. 65).

I. BACKGROUND

Both Ms. Crowe and Ms. Atkins were employees of SCHS, however each were employed at different clinics; Ms. Crowe was employed at the Kentwood Clinic and Ms. Atkins was employed at the Greenberg Clinic. (Rec. Doc. 67, at 3, 7). Both Ms. Crowe and Ms. Atkins were terminated from employment at SCHS. Ms. Crowe alleges that she was terminated for reporting Medicare, Medicaid, and rural clinic fraud to the Attorney General's office. (Doc. 1, at 1-2). Ms. Crowe also alleges that, in violation of the Louisiana whistleblower statute, she was terminated in retaliation for making a witness statement to police regarding the unauthorized and unreported distribution of Demerol by Dr. Joseph Freeman from the SCHS clinic where she was employed. (Doc. 1, 3-4). Ms. Atkins was terminated due to incidents of unauthorized and undocumented distribution of Viagra and Cialis. Ms. Atkins, after being terminated, filed suit with the Equal Employment Opportunity Commission alleging race discrimination and retaliation. State prosecutors brought criminal charges against Ms. Atkins on April 11, 2011. The civil suit was stayed while the criminal suit proceeded. The criminal case was set for trial the week of March 4, 2013. However, on March 4, 2013, the State of Louisiana nolle prossed the charge. At a hearing on October, 18, 2013, the State of Louisiana then stipulated that the matter was dismissed and that there were no charges pending against Ms. Atkins. As of December 2, 2013, Ms. Atkins' counsel was told by the District Attorney that the State was considering whether to file additional criminal charges against Ms. Atkins. No further action has been taken.

In the instant motion, Plaintiff's counsel contends that plaintiff's "key witness," Ms. Atkins, is "still bogged down in a criminal prosecution in which the prosecuting witness is defendant Southeast Community Health Systems (SECH)." (Rec. Doc. 60, at 1). Plaintiff states that because Ms. Crowe and Ms. Atkins did not work at the same clinic, the "discovery" of Ms. Atkins as a potential witness was delayed; indeed, her only connection to Ms. Crowe appears to be that Dr. Freeman, who Ms. Crowe alleges removed unreported amounts of Demerol, traveled to and from and worked at the clinics where both Ms. Crowe and Ms. Atkins were employed. (Rec. Doc. 67, at 3). Plaintiff states that Ms. Atkins was not one of the employees listed as being on duty at the Greensberg clinic "on April 1, the day plaintiff reported Dr Freeman's taking the Demerol, and thus less likely to have heard anything to the effect that Dr Freeman had knowledge that plaintiff had complained to the police about his taking the Demerol." (Doc. 43, at 1 n.1). Plaintiff made the statement in an earlier Motion to Continue All Trial Dates (Rec. Doc. 43) that explains the importance of Ms. Atkins's testimony:

> Gwin [sic] Atkins was not among the employees identified as on duty at the Greenburg Clinic on April 1, the day plaintiff reported Dr. Freeman's taking the Demerol, and thus less likely to have heard anything to the effect that Dr. Freeman had knowledge that plaintiff had complained to the police about his taking the Demerol. Consequently, she was not interviewed until very recently. *She is the only witness directly spoken to that confirms Dr. Freeman's knowledge of plaintiff's whistle-blowing;* a second witness, less immediately aware of his knowledge, is being actively telephoned without success although cooperation is anticipated.

(Rec. Doc. 43, at 1 n.1) (emphasis added). Plaintiff also made the following statement regarding the nature of Ms. Atkins's testimony, albeit in the same prior Motion to Continue (Rec. Doc. 43, at 2): "The gravamen of her testimony is that the decision-maker, Dr. Joseph Freeman, had knowledge of the plaintiff's whistle-blowing contrary to his deposition testimony. Her testimony also appears likely to contradict the testimony of at least two defense witnesses."

4

Plaintiff states in the instant motion, supported by Ms. Atkins' attorney's affidavit, that the District Attorney is not currently prosecuting Ms. Atkins but may decide to file additional charges in the future. (Rec. Doc. 60). Plaintiff's counsel attaches Ms. Atkins' attorney's affidavit and refers to Ms. Atkins's attorney's explanation, stating that Ms. Atkins is likely to invoke her Fifth Amendment right in regards to her testimony in this case: "[Atkins's attorney] concludes by stating that as long as there is a threat of criminal prosecution concerning matters occurring while Ms. Atkins was employed at SECH, she will invoke her Fifth Amendment right." (Doc. 60, at 3).

## II.    LAW & ANALYSIS

"The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, which includes authority to control the scope and pace of discovery." *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir.1990). A district court's power to stay proceedings also encompasses the discretionary authority to stay a civil action pending the resolution of parallel criminal proceeding when the interests of justice so require. *United States v. Little Al,* 712 F.2d 133, 135 (5th Cir.1983); *Whitney Nat'l Bank v. Air Ambulance ex rel. B&C Flight Mgmt., Inc.*, 2007 WL 1468417, No. H-04-2220 (S.D.Tx. May 18, 2007). Yet the district court does not possess unbounded discretion. *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 545 (5th Cir.1983).

It is well-settled that "[t]here is no general constitutional, statutory, or common law prohibition against the simultaneous prosecution of parallel criminal and civil actions." *D'Angelo v. Pintado*, 2009 WL 4642009, No. 09-3667 (E.D.La. Dec. 2, 2009) (citing SE*C v. Fist Fin.*

5

*Group of Texas, Inc.*, 659 F.2d 660, 666–67 (5th Cir.1981)). Thus, in exercising its discretion to stay such civil proceedings, a district court should consider the following factors: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to plaintiff caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest. *See, e.g.*, *Whitney Nat'l Bank*, 2007 WL 1468417 at *2.

Of these factors, whether the issues underlying civil and criminal actions overlap is considered the most important threshold factor. *State Farm Lloyds v. Wood*, 2006 WL 3691115 at *2, (S.D.Tx. Dec. 12, 2006). "Further, before granting a stay pending the resolution of another case, the court must carefully consider the time reasonably expected for resolution of the 'other case,' in light of the principle that 'stay orders will be reversed when they are found to be immoderate or of an indefinite duration.'" *Wedgeworth*, 706 F.2d at 545 (5th Cir. 1983) (quoting *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982); *accord Landis v. North American Co.,* 299 U.S. 248, 257, 57 S.Ct. 163, 167, 81 L.Ed. 153 (1936). Finally, the party seeking the stay bears the burden of demonstrating the circumstances warrant a stay of proceedings. *Wedgeworth*, 706 F.2d at 545.

In addressing the "most important" of the factors, the Court notes that the civil and criminal proceedings at issue here do not substantially overlap. Indeed, unlike case law addressing the stay of parallel civil and criminal proceedings, this matter involves a stay pending a *non*-party witness's criminal proceeding. As plaintiff noted in its memorandum, there exists "no on-point law related to the stay of a civil proceeding because of the Fifth Amendment rights of a non-party witness." (Rec. Doc. 67, at 1). The criminal proceeding against Ms. Atkins arises

6

out of her alleged unauthorized and undocumented distribution of Viagra and similar medications. (Doc. 62, at 8). The issues in the criminal case overlap only to the extent that Ms. Atkins potential testimony regards Dr. Freeman's knowledge of Ms. Crowe's whistleblowing activity, which supports Ms. Crowe's claim under the Louisiana whistleblower's statute, and to the extent that Ms. Atkins allegedly engaged in the same type of activity that Ms. Crowe alleged occurred at her clinic. Because Ms. Crowe and Ms. Atkins' attorney state that Ms. Atkins will assert her Fifth Amendment privilege, any further details regarding the testimony's potential overlap are unknown.

The assertion of the Fifth Amendment privilege, however, should not bar the court from proceeding in this matter: it does not involve any prosecution involving Ms. Crowe or another party to this lawsuit. If the Fifth Amendment privilege had been asserted by the defendant (or plaintiff herself), the Court might find reason to stay the litigation further. *See Holden Roofing, Inc. v. All States Roofing*, *Inc*., 2007 WL 1173634 (S.D. Tex. Apr. 18, 2007)("If the case is stayed, the court would not have to make question-by-question rulings on the validity of an assertion of the Fifth Amendment by at least the eight named defendants and any other persons who may have been involved in their activities."); *Dominguez v. Hartford Fin. Servs. Grp., Inc.,* 530 F. Supp. 2d 902, 907 (S.D. Tex. 2008) ("Moreover, if civil discovery proceeds and Hoeffner, Rossow, and Prestage are deposed, they are entitled to assert a Fifth Amendment privilege to aspects of their testimony because the criminal prosecution, involving substantially the same issues, is still pending."). If that were the case, the public's interest in the accused's ability to assert the Fifth Amendment privilege might outweigh the public interest in expeditious litigation. Further, if "the Fifth Amendment privilege is invoked in a civil proceeding to avoid discovery, a court must conduct a 'particularized inquiry, deciding in connection with each specific area that

7

the questioning seeks to explore, whether or not the privilege is well-founded.'" *Frierson v. City of Terrell*, 2003 WL 21355969 (N.D. Tex. June 6, 2003)(quoting *SEC v. First Financial Group of Texas, Inc.,* 659 F.2d 660, 668 (5th Cir.1981)). Even so, "[w]hile it may be true that an individual should suffer no penalty for the assertion of a constitutional right, neither should third parties sued by that individual who have no apparent interest in the criminal prosecution, be placed at a disadvantage thereby." *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1088 (5th Cir. 1979)(internal citations and quotation omitted). Thus, the assertion of a Fifth Amendment privilege by a non-party witness—however "key" the testimony—should not stall the litigation any further. Plaintiff instituted and maintained this action unaware of Ms. Atkins' role in the litigation. By plaintiff's own admission, Ms. Atkins was not considered because of her likely lack of involvement with the facts of this matter, despite later learning of the importance of her testimony.

Although the Court recognizes the critical nature of Ms. Atkins's testimony, according to the plaintiff, the Court must also consider the effect of the stay of the matter on all parties involved, as well as the public and the courts' interest in resolving the matter. Having once jointly agreed to stay this matter, the defendants now do not agree to do so, instead filing a now-pending Motion for Summary Judgment. In addition, this matter has been pending before this Court since it was initiated on August 26, 2010; it is in the Court's interest to further litigation in a judicious fashion. Granting a stay of this matter for the sole purpose of obtaining Ms. Atkins' testimony will in essence result in an indefinite stay of the matter. Plaintiff suggests that the time period for the state to bring charges against Ms. Atkins will prescribe by "February – April 2015." (Rec. Doc. 67, at 8). Whether the charges will prescribe under the Louisiana Code of Criminal Procedure Article 578 (or whether the prescription period applies), the charges have not

8

yet prescribed and the District Attorney still may choose to bring charges against Ms. Atkins. Therefore, the stay of this matter would again be based on an undeterminable event and may result in the matter being stayed indefinitely.

Accordingly,

**IT IS ORDERED** that the Motion to Extend Stay (Rec. Doc. 60) is **DENIED**.

New Orleans, Louisiana, this 26th day of March, 2014.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**