UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JUDY YOUNG CROWE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-2838** |
| **SOUTHEAST COMMUNITY HEALTH SYSTEMS** | **SECTION "K"(3)** |

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment, Rec. Doc. 71. Defendant, Southeast Community Health Systems ("SCHS"), contends that Plaintiff Judy Young Crowe's whistleblower claims under the federal False Claims Act, 31 U.S.C. § 3730(h), and the Louisiana Whistleblower statute, La. R.S. 23:967(A)(2), should be dismissed. (Compl. ¶6-25). Having reviewed the pleadings, memoranda, exhibits, deposition testimony, affidavits, and relevant law, the Court finds merit in the motion for summary judgment.

### I.   BACKGROUND

SCHS is a federally-funded, non-profit community health organization, providing health care to rural communities. Def.'s Mem. Supp. Summ. J., 1, Rec. Doc. 71. Plaintiff Judy Crowe, a registered nurse, was formerly employed by SCHS as a nurse at its Kentwood Clinic. *Id.* at 2. Before SCHS purchased the Kentwood Clinic, the clinic was owned and operated by Dr. Carlton Faller, who continued to work as an employee of SCHS after SCHS purchased the clinic. Crowe Dep. 87:4-17, Aug. 24, 2012, Rec. Doc. 71-3. Dr. Faller hired Ms. Crowe in or around May of 2009. *Id.* at 57, 67, 71-72, 82. Ms. Crowe had a history of prescription fraud and voluntarily surrendered her license in 1997—which was reinstated prior to being hired by SCHS—and disclosed this to Dr. Faller at the time she was hired. *Id.* at 15-16, 46, 72. While employed at

SCHS, Ms. Crowe considered Dr. Faller her immediate supervisor and had a reporting relationship with Deana McClain, the SCHS clinical coordinator. *Id.* at 96-97; 98-99.

In January of 2010, Dr. Faller took a leave of absence for medical reasons. Crowe Dep. 150:17-19, Aug. 24, 2012. In March of 2010, Dr. Joseph Freeman was hired by SCHS on a contract basis as medical director working at the Kentwood Clinic and began full-time employment as the medical director on April 1, 2010. Freeman Dep. 9:25, April 10, 2012, Rec. Doc. 71-3; Senegal Dep. 18:11, Feb. 19, 2013, Rec. Doc. 71-3. Upon arriving at the clinic, Dr. Freeman found the clinic to be a "mess," noting that the on-site physician, Dr. Faller, had been dispensing refill prescriptions without seeing patients and that the electronic medical record system was not being adequately used. Freeman Dep. 8-9. According to Ms. Crowe, when Dr. Freeman arrived at the clinic, she informed him of the "general running of the clinic . . . and part of [that was their] narcotic box" that contained the prescription narcotic Demerol. Crowe Dep. 151:4-10. However, in his deposition, Dr. Freeman stated that he was not aware the clinic maintained a supply of narcotics until he noticed several patients seeking shots of Demerol and asked Ms. Crowe to show him where the Demerol was kept. Freeman Dep. 11:16-22. Dr. Freeman was disturbed by the improper maintenance of the logs used to document narcotic supply as well as the process used in acquiring the Demerol. Freeman Dep. 11-12. Ms. McClain, the clinic coordinator, was also unaware of the lack of medical records as to the supply of Demerol until Dr. Freeman brought it to her attention. McClain Dep. 15-16, Feb. 27, 2013, Rec. Doc. 71-3.

On the day that Dr. Freeman asked Ms. Crowe to show him where the Demerol was kept, after all patients were gone, Ms. Crowe unlocked the medical supply cabinet, to which only Ms. Crowe and Dr. Faller had keys, and Dr. Freeman removed the vials of Demerol. Crowe Dep.

155.  Ms. Crowe in her deposition stated that when she asked Dr. Freeman why he was taking the Demerol, he told her not to worry about it and to get him a bag.  Crowe Dep. 154.  Ms. Crowe made copies of the logbook pages for the supply of Demerol he took, even though Dr. Freeman had not logged the removal of Demerol in the log books.  Crowe Dep. 154-5.  Dr. Freeman then left the clinic with the Demerol and the copied logbook pages.  Crowe Dep. 156.

Ms. Crowe alleges that she was "in shock" that Dr. Freeman did not "sign out" the Demerol on the logbooks and attempted to call him after he left.  Crowe Dep. 156.  She then wrote on the logbook that Dr. Freeman had removed the Demerol and locked the logbook in the cabinet.  Crowe Dep. 156.  Ms. Crowe also states that she left Ms. McClain a voicemail and emailed her that same day.  Crowe Dep. 157:5-14.  In her voicemail, Ms. Crowe said that Dr. Freeman removed the Demerol from the clinic without signing out and asked what she was supposed to do.  Ms. Crowe's email of March 30, 2010, sent at 2:47 p.m. to Deana McClain, stated:

> 3/30/10 MS. DEANA, JUST A NOTE TO LET YOU KNOW **YESTERDAY** AFTERNOON I HAD A MEETING WITH DR. FREEMAN AND DID NOT CLOCK OUT TILL ABOUT 5:45 PM, ALSO DR. FREEMAN TOOK ALL THE DEMEROL FROM OUR CLINIC, HE ASK [*sic*] ME TO E-MAIL YOU AND LET YOU KNOW, J. CROWE, RN

McClain Dep. Ex. 3. (emphasis added).

Ms. Crowe returned to work the next day, March 31, 2010, and attempted to call Ms. McClain and Dr. Freeman several times without reaching either.  Crowe Dep. 157-58.  Meanwhile, Dr. Freeman spoke with Selina Senegal, CEO of SCHS, recommending that Ms. Crowe and others at the Kentwood Clinic be terminated.  Freeman Dep. 37-39.  That evening, on March 31, 2010, Dr. Freeman emailed Ms. McClain expressing his concern over the improper

3

procedures involving narcotics at the clinic, specifically as to Ms. Crowe.  In his email, Dr. Freeman stated:

> She stated she ordered it when she informed me that it was in the clinic. I am not saying she wrote the prescription, but as the Rn supervisor it was a serious breech [*sic*] of protocol. So I am ready to let her go or reassign her….but I need to make sur [*sic*] we have nurse coverage.

McClain Dep. Ex. 4. 9:38 p.m.

On April 1, 2010, again returning to the clinic, Ms. Crowe reached Ms. McClain and had a conversation with Ms. McClain, asking her what Dr. Freeman had done with the Demerol.  Crowe Dep. 163.  Ms. Crowe testified that Ms. McClain, who was on the phone with Dr. Freeman, allowed Ms. Crowe to speak with Dr. Freeman who told her it was none of her concern and "hung up."  *Id.* at 163-64.  Three years later, in her recent affidavit of February 25, 2013, however, Ms. Crowe recalled having further conversation with Dr. Freeman on April 1, 2010, wherein she told Dr. Freeman that "he 'left me no choice. That I was going to Dr. Faller' and (either I or we) 'were going to the police.'"  Pl. Mem. Opp. Mot. Summ. J., Ex. 4A, Rec. Doc. 87-2.

At her lunch break on April 1, 2010, Ms. Crowe left the clinic and walked to Dr. Faller's house to speak with him about her concerns.  Crowe Dep. 165.  After returning to the clinic, Ms. Crowe received a call from the police, informing her that Dr. Faller had reported the Demerol stolen and asking her to come to the station and make a report.  *Id.* at 167-69.  Ms. Crowe went to the Kentwood Police Station and made a two-page handwritten report.  *Id.* at 169-170.

The police officer who received her report, Bobby Hopson, visited the Kentwood Clinic on April 1, 2010, but made no further investigations.  Crowe Dep. 178-79.  Dr. Freeman in his deposition stated that "[n]o one ever came to [him] and said [he] allegedly stole Demerol from Dr. Faller" and that he had not heard any information of any kind that Ms. Crowe had made a

4

witness statement to the police about the Demerol.  Freeman Dep. 87-88.  In his deposition, Dr. Freeman learned for the first time that Dr. Faller had reported him to the police for theft of the Demerol.  Freeman Dep., 86-87.  Ms. Crowe also admits that she did not tell any management personnel or any person at the Kentwood Clinic that she made a police report regarding the incident or that she was going to make such a report.  Crowe Dep. 169:7-25; 177:25, 178:1-6.

After removing the Demerol, Dr. Freeman had contacted the Drug Enforcement Agency (DEA) inquiring as to proper procedure for disposal.  Freeman Dep. 17.  The DEA instructed Dr. Freeman to dispose of the Demerol with witnesses present.  *Id.* at 17-18.  Dr. Freeman disposed of the Demerol as required in the presence of Ms. McClain and another nurse, documenting the disposal with video and photographs, and filling out the necessary forms.  *Id.* at 18-19.

Ms. Crowe called in sick the next working day, Monday April 5, 2010.  Crowe Dep. 178. On the same date, Dr. Freeman and Ms. McClain wrote an employee warning report to Ms. Crowe detailing her improper recordation of the Demerol in addition to other complaints, including failing to explain to Human Resources the past issues with her license.  Freeman Dep. 63, Ex. 3.  After having been informed by Ms. Senegal that Ms. Crowe would be terminated, Freeman Dep. 51-51, Dr. Freeman called Ms. Crowe on April 5, 2010 to inform her that she would be terminated.  Crowe Dep. 184.

Ms. Crowe brought the instant action on August 26, 2010 alleging that she was terminated from employment with SCHS in violation of the federal False Claims Act, 31 U.S.C. § 3730(h) and in violation of the Louisiana Whistleblower statute, La. R.S. 23:967.[1]  However, in her Motion to Continue Motion for Summary Judgment, Rec. Doc. 73,1,  Plaintiff states that she "abandons her claim related to Medicaid/Medicaid [*sic*], but maintains her claim related to

---

[1] *See* Second Amended Complaint, Rec. Doc. 17. Count 3 (defamation claim) of that complaint was dismissed by this Court on January 24, 2012.  Order, Rec. Doc. 21.

5

blowing the whistle about Dr Freeman's [*sic*] taking the Demerol. Accordingly, she has no opposition to a dismissal of the claim."

## II.     LEGAL STANDARDS

### A.  Motion for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco,* 76 F.3d 651 (5th Cir.1996) (citing *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 912–13 (5th Cir. 1992)).  However, if the nonmoving party would bear the burden of proof on a claim at trial, the moving party need not negate the elements of that claim, but only to "point out the absence of evidence supporting the nonmoving party's case." *Brown v. Trinity Catering, Inc.* 2007 WL 4365384 (E.D.La. Dec.11, 2007) (citing *Stults,* 76 F.3d at 656).

When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d

536, 538 (5th Cir.2007) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County,* 246 F.3d 481, 489 (5th Cir.2001) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255, 106 S.Ct. at 2513). However, as the Fifth Circuit has explained:

> [c]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company,* 612 F. 3rd 851, 857 (5th Cir. 2010).

### B.  Supplemental Jurisdiction

In this matter, the Plaintiff, in her Motion to Continue Motion for Summary Judgment, stated that she abandons the Medicaid and Medicare claim.  Rec. Doc. 73, 1.  In Plaintiff's Statement of Countervailing Facts, Ms. Crowe also stated that "Nos. 1-17 are admitted," most of which address the "Medicaid/Medicare count which has been abandoned."  Rec. Doc. 87-1, at 1.  Though Defendant initially addressed the "Medicaid and Medicare" claim (or the federal False Claims Act claim) in its Motion for Summary Judgment, Rec. Doc. 71, in subsequent briefing, the Defendant stated that the parties "stipulated to the dismissal of the False Claims Act" claim. Reply Mem. Supp. Motion for Summ. J. Rec. Doc. 80-3, at 3.  Because Plaintiff provides no opposition, the Court dismisses the federal False Claims Act claim (Medicaid/Medicare) in this matter.

Having dismissed the federal False Claims Act claim, only the claim under the Louisiana Whistleblower statute remains before this Court.  The False Claims Act claim fell within the original jurisdiction of this Court, and the Court retained jurisdiction over the state law claim

through supplemental jurisdiction under 28 U.S.C. § 1367(a). Where this Court exercises jurisdiction over the sole remaining claim by supplemental jurisdiction, the "district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.,* 556 U.S. 635, 639, 129 S. Ct. 1862, 1866, 173 L. Ed. 2d 843 (2009); *Del-Ray Battery Co. v. Douglas Battery Co.*, 635 F.3d 725, 731 (5th Cir. 2011).

"Although we have stated that our 'general rule' is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial, this rule is neither mandatory nor absolute." *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted). The Fifth Circuit has recognized that the doctrine of supplemental or pendant jurisdiction is a "doctrine of flexibility." *Enochs v. Lampasas Cnty.,* 641 F.3d 155, 161 (5th Cir. 2011) (citing *Carnegie–Mellon v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). The district court has "wide discretion" in deciding whether to retain jurisdiction over the remaining state law claim or claims. *Id.* In determining whether to retain jurisdiction, the district court should consider both "the statutory provisions of 28 U.S.C. § 1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness, and comity that the Supreme Court outlined in *Carnegie–Mellon University v. Cohill* and *United Mine Workers v. Gibbs*." *Batiste*, 179 F.3d at 227 (citations omitted). No single factor is dispositive, *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc*., 554 F.3d 595, 601-02 (5th Cir. 2009), and the district court must make its decision "in light of the specific circumstances of the case at bar." *Batiste*, 179 F.3d at 227.

Section 1367(c) provides:

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

8

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367.

As to the factors of judicial economy, convenience, fairness, and comity, Fifth Circuit case law is clear:

> [W]hen a district court declines to exercise jurisdiction over remaining state law claims following the dismissal of all federal-law claims and remands a suit after investing a significant amount of judicial resources in the litigation analogous to that invested by the district court in this case [during more than 3 years of litigation, the court had decided 41 dispositive motions, 14 *Daubert* motions and 7 other motions in limine; discovery was closed; and the parties were making final preparations for their fourth trial setting], that court has abused its discretion under 28 U.S.C. § 1367.

*Sullivan v. Worley Catastrophe Servs., LLC*, CIV.A. 11-2597, 2013 WL 5530277 (E.D. La. Oct. 7, 2013) (citing *Brookshire Bros.,* 554 F.3d at 602).

Here, the claim under the Louisiana Whistleblower statute remains before this Court after the dismissal of the claim providing original jurisdiction and does not present a novel or complex question of state law. Thus, section 1367(c) allows this Court to exercise supplemental jurisdiction at its discretion.

Considering the *Cargnegie-Mellon* factors, the parties have invested substantial time and effort in litigating this matter, which has been pending since August of 2010. The parties have conducted extensive motion practice and discovery during that time, and trial in this matter is set for May 12, 2014. Scheduling Order, Rec. Doc. 55. In addition, this Court has made several rulings on discovery and on the stay of proceedings requiring intensive factual review. In light of the substantial amount of judicial resources spent on this matter, this Court exercises

9

supplemental jurisdiction over the remaining claim turning now to the state law relevant to the claim.

### C. Louisiana Whistleblower Statute

The Louisiana Whistleblower statute provides certain protections to employees who disclose or threaten to disclose an employer's unlawful activity:

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

La. R.S. § 23:967(A)(1-3)

In determining this issue of state law, the court must look to the final decisions of that state's highest court. *Chaney v. Dreyfus Serv. Corp.,* 595 F.3d 219, 229 (5th Cir. 2010). In the absence of a decision from the Louisiana Supreme Court, this Court must make an *Erie* guess and determine how that court would resolve the issue if presented with the same case. *Id.* "In making an *Erie* guess, we defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise, and we may consult a variety of sources, including the general rule on the issue, decisions from other jurisdictions, and general policy concerns." *Id.* (citation omitted).

Louisiana courts state that the statute "targets serious employer conduct that violates the law." *Fondren v. Greater New Orleans Expressway Comm'n,* 871 So. 2d 688, 691 (La. App. 5 Cir. 4/27/04) (citing *Puig v. Greater New Orleans Expressway Commission,* 772 So.2d 842, 845 (La. App. 5 Cir. 10/31/00), *writ denied,* 786 So.2d 731 (La. 3/9/01)), and it offers protection only to those employees "who face 'reprisals' from their employers based solely upon an employee's

10

*knowledge* of an illegal workplace practice and his refusal to participate in the practice or intention to report it." *Hale,* 886 So. 2d at 1215. The plaintiff bears the burden of proof in making a claim under the whistleblower statute. *See Accardo v. Louisiana Health Servs. & Indem. Co.*, 943 So. 2d 381, 387 (La. App. 1 Cir. 6/21/06). Because Plaintiff has the burden of proof as to this claim, Defendant need not negate the claim but, as stated above, must show the Plaintiff lacks evidence sufficient "to enable it to survive a motion for directed verdict at trial." *Stultz*, 76 F.3d at 656 (citation omitted).

  Louisiana courts have interpreted the statute as requiring certain elements. *See, e.g.*, *Krielow v. R & H Supply, Inc.*, 123 So. 3d 1235, 1239 (La. App. 3 Cir. 10/9/13); *Hale v. Touro Infirmary*, 886 So. 2d 1210, 1215 (La. App. 4 Cir. 11/3/04), *writ denied*, 896 So. 2d 1036 (La. 3/24/05). While the Louisiana Supreme Court has not directly addressed whether a plaintiff must prove an actual violation of state law, the appellate courts have consistently determined that the statute requires proof of an actual violation. *See, e.g.*, *Accardo v. Louisiana Health Servs. & Indem. Co.,* 943 So. 2d 381, 383 (La. App. 1 Cir. 6/21/06); *Hale v. Touro Infirmary*, 886 So. 2d 1210 (La. App. 4 Cir. 11/3/04), *writ denied,* 896 So. 2d 1036 (La. 3/24/05); *Goldsby v. State, Dep't of Corr.,* 861 So. 2d 236 (La. App. 1 Cir. 11/7/03), *writ denied*, 0328 870 So. 2d 271 (La. 4/8/04), and *writ denied,* 870 So. 2d 271 (La. 4/8/04). Therefore, as part of the plaintiff's prima facie case, "the plaintiff must prove an actual violation of a state law, not just a good faith belief that a law was broken." *Mabry v. Andrus*, 34 So. 3d 1075, 1081 (La. App. 2 Cir. 4/14/10), *writ denied,* 45 So. 3d 1079 (La. 9/24/10) (citations omitted). "Moreover, the employee must first 'advis[e] the employer of the violation of law' before the statutory remedies take effect." *Id.* (citation omitted); *see Fondren*, 871 So. 2d at 691.

In sum, to prevail on her claim, Ms. Crowe must prove that: (1) her employer violated the law through a prohibited workplace act or practice; (2) she advised her employer of the practice; (3) she then refused to participate in the prohibited practice or threatened to disclose the practice; and (4) she was fired as a result of her refusal to participate in or threat to disclose the practice. *See Hale,* 886 So. 2d at 1216. "Failure to put forth evidence to satisfy any of these elements must result in summary judgment" in favor of the employer. *Id.*

In addition, courts have found that the "good faith" of the employee in reporting is a "separate prerequisite condition that, along with the prerequisite condition of advising the employer of the actual violation of state law, must be fulfilled before the employee undertakes one of the three protected disclosure activities." *Accardo*, 943 So. 2d at 385; *see also Kite v. Kite Bros.,* 74 So. 3d 1266, 1271 (La. App. 3 Cir. 10/5/11), *writ denied*, 77 So. 3d 966 (La. 1/13/12).

### III.   ANALYSIS

#### A. Violation of State Law

In her Opposition to Motion for Summary Judgment, Plaintiff alleges that Dr. Freeman, an employee of SCHS, violated state criminal law, committing theft, and by failing to correctly log out the Demerol he took on March 30, 2010, violated physician Louisiana physician licensing regulations, citing Louisiana's Administrative Code Title 46 sections 6533, 6527, and 6531. Rec. Doc. 87, 3-4. In their Motion for Summary Judgment, Defendants contend that Plaintiff cannot meet the burden of proof as to any alleged violation of state law: no theft in violation of Louisiana criminal law occurred, and any citation to physician regulations regarding documentation of narcotics administration are not criminal in nature and were not reported by Ms. Crowe in her police report. Rec. Doc. 80-3, at 6.

Defendants note that the Kentwood Police Department did not further investigate the report of theft made by Dr. Faller and Ms. Crowe. Def.'s Mem. Supp. Mot. Summ. J., Rec. Doc. 71, 23. While Plaintiff in its Opposition suggests that "Defendant is not entitled to the inference that the reason the police did not go further with the investigation was because the matter was not a violation of law, criminal or otherwise," Rec. Doc. 87, 8 n.10, the Court "queries"—as Plaintiff's counsel oft requests in its motions—how the violation of a criminal law might otherwise be documented. The fact that no entity charged Dr. Freeman with theft or any other violation of Louisiana criminal law bears strongly in favor of Defendant's argument. In addition to the fact that no person was formally charged with theft, the basic statutory requirements of theft includes intent to permanently deprive another of anything of value belonging to other.[2] As Defendants correctly note, "[t]he Demerol did not belong to Dr. Faller or to Ms. Crowe [; instead,] the head medical employee at SCHS properly took SCHS property into his possession and appropriately disposed of it." Def.'s Mem. Supp. Mot. Summ. J., Rec. Doc. 71, 23.

Defendants also contend that any violation of the physician regulations regarding distribution of narcotic medicine does not translate to a "violation of state law" as Dr. Faller would have been responsible for the record keeping of narcotics distribution and Ms. Crowe may have remedied any violation by making a record in the logbook herself. Def.'s Reply Mem. Supp. Mot. Summ. J., Rec. Doc. 80, 5-6.

---

[2] La. R.S.§ 14:67 states:

> A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

The Louisiana administrative statutes require a "registrant," who is entitled to possess and distribute certain medications, record acquisitions, dispensations, and any "other transaction" of the medication; the registrant should record the name of the medication, amount, date transferred, and the name and DEA registration number of the person or firm to whom the medication was otherwise transferred.[3]  When the medication is "intentionally disposed of or destroyed, concurrently with such destruction or disposal," the "registrant shall" record the name, quantity and amount, dosage strength, date of destruction, and "reasons for or circumstances surrounding its destruction or disposal.[4]  Similarly, when the medication is "lost, stolen, accidentally destroyed, or otherwise unaccounted for," the registrant must record the name of the medication, amount, dosage strength, and date along with the "reasons for or circumstances surrounding such loss, theft, accidental destruction, or other such disposition."[5]

Plaintiff contends and Defendants do not dispute that Dr. Faller was the registrant who acquired the Demerol present at the Kentwood Clinic, not Dr. Freeman.  Def.'s Reply Mem. Supp. Mot. Summ. J., Rec. Doc. 80, 6.  According to the administrative regulations cited by Plaintiff, Dr. Faller as registrant would be responsible for maintaining proper records of any removal of the Demerol.[6]  Further, under the administrative regulations, Dr. Faller would be responsible for any documentation error, not Dr. Freeman.  Plaintiff makes no allegation that Dr. Freeman should have notified any other department or any other person, stating only that he failed to "sign out," and citing only statutes relating to the responsibility of a "registrant."  *See*

---

[3] *See* La. Admin. Code tit. 46:6527, 6533.
[4] La. Admin Code tit. 46:6533(B).
[5] La. Admin Code tit. 46:6533(C).
[6] La. Admin. Code tit. 46, pt. XLV, § 6561 requires:
   A. A registrant is personally responsible for knowledge of and compliance with the provisions, requirements, and procedures set forth in this Chapter and with knowledge of and compliance with all other federal, state, and local laws and regulations applicable to the purchase, acquisition, possession, storage, maintenance, and dispensation of and recordkeeping and reporting for medication.

Pl. Opp. Mot. for Summ. J., Rec. Doc. 87.  More importantly, after removing the Demerol, Dr. Freeman contacted the DEA and properly disposed of the narcotics in the presence of witnesses. Freeman Dep. 17-18.

Even if Dr. Freeman were the registrant, Ms. Crowe recorded Dr. Freeman's removal of the Demerol and emailed Ms. McClain about the removal as Dr. Freeman requested, arguably bringing the records into compliance with the administrative regulations.[7]  Whether her recordation came into compliance with the regulations, she failed to make any administrative complaint regarding an alleged violation of the regulations and fails to demonstrate why Dr. Freeman specifically violated the regulations she cites.[8]  Moreover, Dr. Freeman properly disposed or "wasted" the Demerol, as prescribed by the DEA, and was not subject to any sanctions for his actions.  Freeman Dep. 17-18.

Further, as Defendants point out, this allegation arguably falls outside the scope of the Louisiana Whistleblower statute by alleging conduct by an employee of SCHS and not SCHS itself.  Def. Supp. Reply Supp. Mot. for Summ. J., Rec. Doc. 89 at 3.  The statute "covers only

---

[7] *See Krielow v. R & H Supply, Inc.,* 123 So. 3d 1235, 1238 (La. App. 3 Cir. 10/9/13):
> Krielow, in response to questioning, testified that she did not know whether Richardson was aware of the surplus stock. She did not discuss the surplus stock with Richardson, nor did she threaten to discuss it with him. Similarly, Krielow did not think the company had a sufficient number of software licenses to support the number of users operating the software. However, she worked with R & H's IT contractor to procure the appropriate number of licenses. She testified that she thought the situation had been rectified. She did not report the license issue to the software copyright owner or to any authority, nor did she threaten to report it. In short, Krielow failed to support her claims that R & H committed any illegal act or that she was a whistleblower for purposes of maintaining a cause of action under La.R.S. 23:967.

[8] *See* La. Admin. Code tit. 46, pt. XLV, § 6557 ("A registrant shall immediately report to the board, in writing, any known or reasonably suspected instance of diversion of medications to unauthorized use or possession by any patient or any other person."); La. Admin. Code tit. 46:6552(A) ("A. Any theft or unexplained loss of controlled substances in the possession of a registrant shall be reported by the registrant to the board, in writing, within 10 days of the date of the registrant's discovery of such theft or loss, but in no event later than 10 days following the completion of the quarterly physical inventory next following such theft or loss. Such written report shall state the date or estimated date of such theft or loss, the generic chemical or trade name, amount or quantity, and dosage form and strength of any medications stolen or lost and a detailed description of the circumstances surrounding the theft or loss.")

serious violations committed by the employer, not illegal acts of a mere co-worker." *Goulas v. LaGreca*, 945 F. Supp. 2d 693, 703 (E.D. La. 2013) *aff'd sub nom. Goulas v. LaGreca Servs., Inc.*, 13-30651, 2014 WL 718433 (5th Cir. 2014).  The statute contemplates a "workplace act or practice that is in violation of state law," La. R.S. 23:967.  Dr. Freeman's alleged single occurrence of a regulatory violation does not appear to meet this criteria; while the administrative statutes might regulate Dr. Freeman's actions, they do not regulate SCHS, a non-profit organization.  *See* Def.'s Supp. Mem. Supp. Mot. Summ. J., Rec. Doc. 89, 3.  Indeed, the improper acquisition and dispensation of Demerol—the very reason Dr. Freeman removed and disposed of the Demerol—appears to be the type of regular "workplace act or practice" which the statute contemplates.  *Id.*

Construing the facts in favor of the nonmovant Plaintiff, Defendants have shown that Plaintiff's claim does not give rise to a material issue of fact where Plaintiff has only alleged conclusory accusations of state law violations without further evidence to substantiate her claim.  Plaintiff's claim should not withstand summary judgment for failure to demonstrate any issue as to whether an actual violation of law occurred.  Nevertheless, assuming *arguendo* that Plaintiff's claim showed a genuine issue of material fact as to whether an actual violation of law occurred, Plaintiff's claim does not give rise to such issues of fact as to the other elements of the whistleblower statute.

### B. Actual Notice to Employer and Threat to Disclose

Plaintiff must show that she advised her employer of the violation of law and also that she disclosed or threatened to disclose the violation.  Ms. Crowe was obligated to inform her "employer" of the violation of law, as defined by the Louisiana Revised Statute 23:302(2). [9]

---

[9] *Langley v. Pinkerton's Inc.,* 220 F. Supp. 2d 575, 579-80 (M.D. La. 2002)(" The Statute does not define 'employer,' and though it is found in Chapter 9 rather than in 3-A, courts have interpreted La. R.S. 23:302(2)'s

16

Plaintiff claims that she made an attempt to advise the employer "in good faith." Pl. Opp. Motion Summ. J., Rec. Doc. 87, at 2.  While the Court notes that Plaintiff must make her claims in good faith, as required by case law on point, Plaintiff must give actual notice to her employer of the misconduct to meet the requirements of the statute.  In the first place, Plaintiff's good faith in making these claims is suspect in light of the sequence of events following Dr. Freeman's discovery and removal of the Demerol.  Plaintiff contends that "she repeatedly attempted to advise both Dr. Freeman and Ms. McClain that it was wrong to take the Demerol without signing out for it." *Id.* at 3.  Prior to making these attempts, and far from trumpeting a violation of state law, Ms. Crowe's email to Ms. McClain the day after Dr. Freeman removed the Demerol simply relayed the information that Dr. Freeman had *requested* she convey—that Dr. Freeman had removed the Demerol from the clinic.

In addition, though Ms. Crowe claims that she attempted to make contact with Dr. Freeman and Ms. McClain, neither Dr. Freeman nor Ms. McClain "employed" Ms. Crowe to the extent that either person could hire or fire her.[10]  Ms. Crowe admits that she does not remember contacting any person in management and did not know whether any management personnel knew that Ms. Crowe was reporting an alleged violation to the police.  Crowe Dep. 169:7-25; 220:20-25.  Ms. Selina Senegal, CEO of SCHS at the time and Ms. Crowe's "employer," was never informed of Ms. Crowe's alleged knowledge of a violation of state law by Dr. Freeman.

---

definition of 'employer' to apply."); La. R.S. § 23:302 (" 'Employer' means a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee. The provisions of this Chapter shall apply only to an employer who employs twenty or more employees within this state for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.").

[10] Dr. Freeman had the authority to inform Ms. Crowe of her termination, which had been recommended by him to Ms. Selina Senegal.  Freeman, Dep. 41, 47; Senegal Dep. 21-23.  Ms. Senegal advised him of her decision to terminate before he called Ms. Crowe to inform her of her termination.  Senegal Dep. 23.

Senegal Dep. 41-42.  Thus, Ms. Crowe has failed to establish any facts showing that her "employer" was advised of any violation of state law.

Moreover, Ms. Crowe provides very little credible evidence that she disclosed or made any threat to disclose the violation of her employer.  Ms. Crowe initially testified that she never told anyone at SCHS in management about the police report and had no knowledge as to whether the Kentwood Police Department ever disclosed any information to that effect to management.  Crowe Dep. 177, 169.  However, she recalled years later that she had in fact told Dr. Freeman in a phone conversation on April 1, 2010, that either she or Dr. Faller would go to the police.  Crowe Aff. Feb. 25, 2013; Def. Motion Summ. J., Ex. F, Rec. Doc. 71-3.  She offers a psychiatric opinion supporting her change of testimony that states that some events may trigger a previously unrecalled memory.  Addendum to Psychiatric Evaluation, Pl. Opp. Motion Summ. J., Ex. 4A.  In other instances, courts do not accept affidavits directly contradicting past testimony unless an explanation is offered.  *See, e.g.*, *BLS Joint Venture v. Bank Home Sav. Assoc.*, 985 F.2d 556 (5th Cir. 1993); *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380386 (5th Cir. 2000).  Plaintiff claims upon visiting the Greenberg Clinic, she remembered a phone conversation where she did, in fact, threaten to disclose Dr. Freeman's alleged theft to the police.  Crowe Aff. Feb. 25, 2013.   She also offers the long-awaited affidavit of Ms. Gwen Atkins, referred to in this Court's prior orders in this matter, who states that the "real reason" Dr. Freeman fired Ms. Crowe was to prevent any employees from implicating him in improper narcotics dispensation.  Atkins Aff. Feb. 25, 2013, Pl. Opp. Mot. Summ. J., Ex. 6, Rec. Doc. 87-2.  On the other hand, Dr. Freeman testified that he never had any notice that he was going to be reported to the police.  Freeman Dep. 27.  Ms. Crowe's recent recollection would provide the

sole support for denying summary judgment if Ms. Crowe had established an actual violation of law occurred.

Though the Court questions the veracity of Ms. Crowe's recent recollection occurring three years after the event, the question need not be addressed.  Because Ms. Crowe has not provided sufficient evidence to show a genuine issue of fact as to whether an actual violation of law occurred and whether she gave actual notice to her employer, the Court need not reach the element of whether a reasonable jury may find that she threatened to disclose the violation to Dr. Freeman.

### IV.    CONCLUSION

After viewing the facts presented in the light most favorable to the non-movant, Ms. Crowe, and drawing all reasonable inferences in her favor, the Court concludes that Plaintiff Ms. Crowe has failed to set forth facts from which a reasonable fact finder could conclude that Defendant wrongfully terminated Plaintiff for whistleblowing activity.  Plaintiff has failed to meet her burden of demonstrating that a genuine issue of material fact essential to her claim under the Louisiana whistleblower statute exists.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Rec. Doc. 71) is hereby **GRANTED** as to Plaintiff's claims under the Louisiana Whistleblower statute and under the federal False Claims Act.

New Orleans, Louisiana, this 14th day of April, 2014.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**